IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODNEY V. COLEMAN,

        Plaintiff,                        Case No. 2:06-cv-01583-ALA (PC)

        vs.

SCOTT KERNAN, Warden, et al.,
        Defendants.                ORDER
_____/

        Plaintiff Rodney V. Coleman is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Mr. Coleman claims that Defendants Kernan, Mandeville, Flint, Greer, Hill, and Holliday violated his Eighth Amendment rights because they failed to protect him from an assault by his cell-mate.  On October 12, 2007, Defendants filed a Motion for Summary Judgment.  Doc. No. 34.  On February 19, 2008,[1] Mr. Coleman filed documents in opposition to Defendants' motion.  Doc. Nos. 46, 47.  In addition, Mr. Coleman filed a document entitled "Specification of facts why discovery is necessary."  Doc. No. 48.[2]  For

---

[1] Mr. Coleman made three separate requests for an extension of time to respond to the motion for summary judgment.  The Court granted the requests.  For each request, the Court gave Mr. Coleman an additional 35 days to file an opposition.  Doc. Nos. 37, 42, 45.

[2] The Court construes the unverified document entitled, "Specification of facts why discovery is necessary," as Mr. Coleman's separate statement of undisputed facts because it is the only document filed by Mr. Coleman that addresses the arguments raised in Defendants'

1

the reasons set forth below, Defendants' Motion for Summary Judgment is granted and this action is dismissed.

**I**

**A**

At all relevant times, Mr. Coleman was an inmate at the California State Prison, Sacramento. The gravamen of Mr. Coleman's complaint is that his Eighth Amendment rights were violated when his cell-mate, Mr. B. Rogers, assaulted him on March 24, 2005. As a result of the assault, Mr. Coleman brought suit against Warden Kernan, Associate Warden Mandeville, Lieutenant Flint, Sergeant Greer, Captain Hill, and Ms. Holliday, a psychiatric social worker (collectively "Defendants"). Mr. Coleman contends that Defendants violated his Eighth Amendment rights by failing to protect him from harm while he was incarcerated because they knew, or should have known, that Mr. Rogers was mentally ill and prone to violence and, thus, should not have allowed Mr. Rogers to be his cell-mate .

**B**

Pursuant to Rule 56(c)of the Federal Rules of Civil Procedure, summary judgment may be granted in favor of a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A party's motion for summary judgment must be granted "after adequate time for discovery and upon motion . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."

---

motion for summary judgment.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks omitted).

Where the party resisting a motion for summary judgment is *pro se*, the court "must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (holding that allegations contained in a *pro se* plaintiff's verified pleadings must be considered as evidence for purposes of summary judgment).

Here, Mr. Coleman's complaint is verified (Doc. No. 1) and, thus, will be considered as evidence for purposes of summary judgment. Mr. Coleman filed three documents in opposition to Defendants' motion for summary judgment (Doc. Nos. 46, 47, 48). He did not attest under the penalty of perjury to any of the contentions he set forth in these three documents.

**C**

The facts, in light most favorable to Mr. Coleman, are as follows. Mr. Coleman and Mr. Rogers became cell-mates on March 5, 2005. Before they became cell-mates, on March 2, 2005, Mr. Rogers had a fight with his cell-mate at that time. Officer Mandell responded to the fight. As a result of this fight, Mr. Rogers was removed from his cell and placed in administrative segregation. Mr. Coleman was aware of the fight and Mr. Rogers's placement in administrative segregation because he saw Mr. Rogers removed from his cell. Per prison policy, Officer Mandell issued Mr. Rogers a rule-violation report for mutual combat. Defendant Sergeant Greer reviewed the report to ensure that all procedural requirements had been met, and that the

allegations amounted to a rule violation.

Defendant Lieutenant Flint was the "responding supervisor" the night Mr. Rogers fought with his previous cell-mate. Compl. at 4. Mr. Coleman states that Lieutenant Flint "was well aware, of inmate Rogers, B. propensity [to fight] but yet he ignored that fact, and allowed him back in [the] yard." Compl. at 4.

A captain must determine whether the inmate is a continued threat to the safety and security of the prison. After reviewing Mr. Rogers' information and interviewing him, Defendant Captain Hill determined that the fight was a "spontaneous confrontation" and released Mr. Rogers into the general prison population. Doc. No. 47. at 4. Mr. Coleman states the "lock up order" made Captain Hill aware "that inmate Rogers, B. Had the propensity for violence." Compl. at 4.

On March 5, 2005, Mr. Rogers was assigned to be Mr. Coleman's cell-mate. Mr. Coleman did not object to Mr. Rogers as a cell-mate. Doc. No. 47 at 4. There was no problem or incidents between Mr. Rogers and Mr. Coleman when Mr. Rogers was placed in Mr. Coleman's cell. Doc. No. 47 at 4.

On March 10, 2005, Mr. Rogers appeared before a Senior Hearing Officer and was found guilty of participating in a "mutual combat cell fight" on March 2, 2005. Doc. No. 47 at 10. Defendant Associate Warden Mandeville subsequently reviewed the finding of guilt to ensure that the allegations of which Mr. Rogers was found guilty amounted to a violation of prison rules, and that the evidence presented at the hearing was sufficient to support a finding of guilt. It is undisputed that "[n]othing presented in the charge or the hearing report indicated predatory behavior." Doc. No. 47 at 10. Mr. Coleman states that Associate Warden Mandeville was aware "of the lock up order, that sent inmate Rogers, to [administrative segregation], as well as the disciplinary C.D.C. 115[,] showing that he had assaulted his previous celmate [*sic*]." Compl. at 3. Mr. Coleman also states that Associate Warden Mandeville "should not have allowed, inmate, Rogers, B. back, on the yard, knowing that inmate, Rogers, B. had a propensity for violence."

4

Compl. at 3.

On March 17, 2005, Mr. Rogers appeared before an Interdisciplinary Treatment Team ("IDTT"). IDTT meetings are held for inmates who are released from administrative segregation, but have been receiving mental health services. Mr. Rogers was such an inmate. Doc. No. 47 at 4. If an IDTT determines that there is a potential for in-cell violence, correctional staff would be advised to place the inmate into a holding cell pending placement in administrative segregation or in-patient care. Ms. Holliday, a psychiatric social worker, was a member of the IDTT that evaluated Mr. Rogers. Ms. Holliday and the rest of the IDTT determined that Mr. Rogers could remain in the general population. Mr. Coleman states that Ms. Holiday should have "noticed and noted" that Mr. Rogers "was not fit" to be in the general prison population. Ms. Holliday states that nothing in the IDTT meeting suggested that Mr. Rogers was susceptible to attacking other inmates or that he posed a risk of immediate danger to any other inmate.

On the evening of March 24, 2005, Mr. Coleman informed Officer Mandell that "Rogers . . . wanted to speak to him [Officer Mandell] about getting out of the cell that he was uncomfortable being in the cell with [Mr. Coleman]."[3] Officer Mandell communicated Mr. Rogers's concerns that he wanted to be removed from the cell to Defendant Sergeant Greer, the on-duty sergeant for the prison that evening. It is undisputed that, at that time, "[t]here were no threats of violence of any other objective indication of an imminent fight or possible physical confrontation between Rogers and Coleman." Doc. No. 47 at 6. It is also undisputed that "[t]here were no allegations that the two had been arguing, that they had threatened each other,

---

[3] There is a date discrepancy in Mr. Coleman's complaint. In portions of the complaint he states that the assault occurred on March 24, 2006, but in other parts of the complaint he states that it occurred on March 24, 2005. *Compare*, *e.g.*, Compl. at 1 and 8. The Court assumes the assault took place in 2005 because Mr. Coleman alleges that on the evening of the assault, Sergeant Greer told Mr. Rogers "that he didn't want another cell #125 incident with him that took place (2) two weeks earlier [on March 2, 2005]." Compl. at 10.

that they were not getting along over the twenty-day period that have been housed together or that either one was even in fear for their safety." Doc. No. 47 at 7.  Sergeant Greer did not remove Mr. Rogers from the cell.

Later that evening, while Mr. Coleman was asleep, Mr. Rogers assaulted him.  As result of the assault, Mr. Coleman "suffered a busted lower lip, that required 15 stitches, as well as severe lower back pain, and headaches, and vomiting up blood." Compl. at 2.  Prior to this incident, "[Mr.] Coleman never felt threatened by Rogers nor did he suspect that Rogers would attack him." Doc. No. 47 at 8.  It is undisputed that "[i]f cell inhabitants are uncomfortable with each other, either inmate may request a convenience cell move, which is not immediate or guaranteed." Doc. No. 47 at 8.

Mr. Coleman states that Defendant Warden Kernan "has a duty to ensure that every inmate, under his control is to be kept safe." Compl. at 2.  Mr. Coleman also states that Warden Kernan "knew or should have been aware of inmate, Rogers, B. propensity for violence" from his lock up order.  Compl. at 2.

**II**

Mr. Coleman argues that Defendants were deliberately indifferent to his safety in violation of his Eighth Amendment rights.  Specifically, Mr. Coleman contends that Defendants were deliberately indifferent to his safety by making Mr. Rogers his cell-mate when they knew, or should have known, that Mr. Rogers had a propensity for violence because he had a fight with his previous cell-mate and he suffered from "psychological problems." Doc. No. 48 at 2.  Mr. Coleman maintains that "CDCR is overwhelmed with mentally ill inmates who are not properly diagnosed, and are left to victimize other inmate[s] or become victims themselves." Doc. No. 48 at 3.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted).  A violation of that duty can constitute cruel and unusual punishment under the Eighth Amendment. *Id.* at 832.

6

However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

To establish liability under the Eighth Amendment for a prison official's failure to protect an inmate from harm, the prisoner must establish that the official was deliberately indifferent to a substantial risk of serious harm to the inmate. *Id.* at 828, 834. This is a two-part inquiry. First, the plaintiff must establish an "objectively, sufficiently serious" risk of harm to his safety. *Id.* at 834. Second, he must show that "the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (citing *Farmer*, 511 U.S. at 834). To be deliberately indifferent, the prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result*.*" *Id.* at 835. Here, Mr. Coleman has failed to establish either element.

(1)

First, it is undisputed that "[t]here were no threats of violence of any other objective indication of an imminent fight or possible physical confrontation between Rogers and Coleman." Doc. No. 47 at 6. It is also undisputed that "[t]here were no allegations that the two had been arguing, that they had threatened each other, that they were not getting along over the twenty-day period that ha[d] been housed together or that either one was even in fear for their safety." Doc. No. 47 at 7. When Mr. Rogers was assigned to be Mr. Coleman's cell-mate**,** Mr. Coleman did not object. Doc. No. 47 at 4. Mr. Coleman has, therefore, failed to establish that, "objectively," there was a "sufficiently serious" risk of harm that Mr. Rogers would assault him. *Farmer*, 511 U.S. at 834; *see also Becker v. Cowan*, 2008 WL 802933, *11 (S.D. Cal. 2008) (explaining that a plaintiff must allege that he or she is actually at a substantial risk of harm, not simply that he or she believes there is a risk).

7

**(2)**

Second, the facts, taken in light most favorable to Mr. Coleman, fail to show that any of the Defendants had a sufficiently culpable state of mind.  Mr. Coleman's allegations against all Defendants stem from Mr. Coleman's claim that, because Mr. Rogers got into a mutual combat fight with his previous cell-mate, they should have known that Mr. Rogers would assault him. Mr. Coleman, however, has failed to provide significant probative evidence to support his claim that Mr. Rogers's one previous fight demonstrated a propensity for violence that would have resulted in an assault against him.  *See, e.g., Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 971 (9th Cir. 1983) (holding that a party opposing summary judgment must present "significant probative evidence to support" their allegations).  Moreover, is undisputed that "[n]othing presented in the charge or the hearing report [concerning Mr. Rogers's fight with his previous cell-mate] indicated [that he had] predatory behavior." Doc. No. 47 at 10.  Thus, the facts, taken in light most favorable to Mr. Coleman, fail to show that any of the Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" or that they "[drew] the inferences." *Farmer*, 511 U.S. at 837.  The evidence does not create a genuine issue of material fact as to whether Defendants should have foreseen this attack. *See id.* at 837 (holding that to act with deliberate indifference, a prison official must be aware of facts from which he could infer the existence of a substantial risk of serious harm).  Therefore, no Eighth Amendment constitutional violation occurred.[4]

Mr. Coleman argues that if he had time for discovery he would have evidence that would show that "inmate Rogers was enrolled in the CCMS mental health program" and that "inmate

---

[4] Mr. Coleman also argues that on the night of the assault Sergeant Greer was informed that Mr. Rogers felt "uncomfortable" and wanted to leave the cell.  It is undisputed, however, that at that time there were no threats of violence or any indication that an imminent fight was possible. Doc. No. 47 at 6.  It is also undisputed that "[i]f cell inhabitants are uncomfortable with each other, either inmate may request a convenience cell move, which is not immediate or guaranteed." Doc. No. 47 at 8.  Thus, the evidence does not show that Sergeant Greer drew an inference that a substantial risk of serious harm existed that Mr. Rogers would assault Mr. Coleman that evening. *Farmer*, 511 U.S. at 837.

Rogers, had psychological problems . . . and that inmate Rogers suffers from emotional problems." Doc. No. 48 at 2. To the extent that this a request for further discovery, the Court previously denied this request in its order filed on March 7, 2008. Doc. No. 51. The discovery deadline in this matter was October 3, 2007. Doc. No. 25. Mr. Coleman makes no argument as to why he seeks discovery after the Court imposed discovery deadline.[5]

## IV

Accordingly, for the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED (Doc. No. 34), and this case is DISMISSED.

///

DATED: June 16, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

---

[5] Defendants argue that they are entitled to the defense of qualified immunity. They cite to *Estate of Ford v. Ramirez-Palmer* for the proposition that reasonable persons in Defendants' positions could have believed their conduct was lawful. 301 F.3d 1043, 1051 (9th Cir. 2002) (holding that prison officials were entitled to the defense of qualified immunity on summary judgment where prisoner was killed by his cell-mate because "it would not be clear to a reasonable prison official when the risk of harm from double-celling psychiatric inmates with one another changes from being a risk of *some* harm to a *substantial* risk of *serious* harm") (emphasis in original). The facts of this case, taken in the light most favorable to Mr. Coleman, do not indicate that a constitutional violation has occurred. Thus, the Court not need reach the issue of whether Defendants are entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (explaining that in resolving claims of qualified immunity on summary judgment, the Court must first answer the question, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?").